HOWARD Z. ROSEN (Bar No. 54442)
**ROSEN MARSILI RAPP LLP**
11150 W. Olympic Blvd., Suite 990
Los Angeles, CA 90064
Telephone: (213) 389-6050
E-mail: hzrosen@rmrllp.com

MAXIMILIAN KAI-YIN LEE (Bar No. 287597)
**LAW OFFICE OF MAXIMILIAN LEE, APC**
1327 N. Broadway
Santa Ana, CA 92706
Telephone: (213) 769-6529
E-mail: m.lee@maxleelaw.com

Attorneys for Plaintiff
DENNIS VEASMAN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| DENNIS VEASMAN,<br><br>    Plaintiff,<br><br>v.<br><br>NUANCE COMMUNICATIONS, INC.<br><br>    Defendant. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>**1.   UNPAID WAGES**<br>**2.   FAILURE TO PAY WAGES UPON TERMINATION**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff DENNIS VEASMAN as against Defendant Nuance Communications, Inc. and alleges the following claims for relief:

## JURISDICTION

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of the state of California and Defendant Nuance Communications, Inc. ("Nuance") is incorporated in the state of Delaware and has its principal place of business in the state of Massachusetts and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## VENUE

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to Plaintiff's claims occurred in the Central District.

## PARTIES

3. Plaintiff Dennis Veasman ("Plaintiff" or Veasman") is and, at all times relevant hereto, was a resident of the State of California residing in Ventura, California.

4. Defendant Nuance is a corporation that is incorporated in the state of Delaware and which has its headquarters and principal place of business in the state of Massachusetts.

## GENERAL ALLEGATIONS

5. On or about March 24, 2020, Veasman entered into an independent contractor agreement with Saykara, Inc. ("Saykara). ("ICA"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit "A." The services that Veasman contracted to perform under the ICA are described in Schedule A, Incentives for Sales Activities. Pursuant to Schedule A, Veasman is entitled to a full sales commission for leads/opportunities that he brought to the table. The full sales commission was 4% of the monthly subscription annualized for each physician that purchased Saykara's AI scribe solution.

6. Saykara's AI scribe solution is a conversational AI and cloud-based ambient clinical intelligence for healthcare providers.

7. After entering into the ICA, Veasman worked daily with Ryan Plasch, Saykara's Vice President, Business Development, on a remote basis from his home in Westlake Village, California. Veasman also worked with Dr. Graham Hughes, President and Chief Operating Officer of Saykara.

8. After the expiration of the ICA In or about September 24, 2020, Saykara and Veasman continued to operate under the same terms and conditions of the ICA without modification. Veasman sold Saykara's AI scribe solution to approximately 15 to 20 physicians and was paid the 4% commission provided in the ICA.

9. During his relationship with Saykara, Veasman referred and completed two major healthcare provider deals with signed agreements. One was with Washington Rural Health Collaborative on September, 8 2020, which consisted of 16 hospitals and their physicians. Three Washington Rural hospitals started using Saykara during 2020 and additional hospitals started in 2021. Virtual presentations were made to six (6) other hospitals, which gave verbal commitments to begin doing business with Saykara.

10. The other provider was StratumMed. StratumMed consisted of approximately 15 shareholders, 75 medical groups, and 12,000 physicians.

11. Veasman had an excellent relationship with StratumMed prior to entering into the ICA with Saykara, as Veasman had previously worked with StratumMed and knew the Chief Executive Officer and President of StratumMed, Trent Kramer.

12. During the six month period of the ICA, Veasman had many calls and discussions with StratumMed about StratumMed-affiliated physicians purchasing Saykara's AI scribe solution.

13. As a result of his relationship with Kramer and others at Stratum Med, Veasman brought StratumMed "to the table" in December 2020 with a signed contract between Saykara and Stratum Med.

14. By bringing StratumMed to the table as a lead/opportunity for Saykara, Veasman is entitled to the 4% sales commission on Saykara's sales of Saykara's AI scribe solution to StratumMed-affiliated physicians regardless of whether Veasman assisted in procuring the sales.

15. Yet, Veasman went beyond the requirements of the ICA to assist Saykara in making sales of Saykara's AI scribe solution by participating in the calls between Saykara and with StratumMed.

16. Plasch made sales presentations calls to StratumMed shareholders medical groups and received verbal commitments to begin using Saykara's services. Veasman was on all the calls and presentations by Saykara staff to StratumMed executives and member clinics.

17. Veasman is informed and believes and based upon such information and belief alleges that StratumMed made additional calls to its members.

18. Carle Foundation, the largest StratumMed shareholder, discussed with Saykara having 800 of its over 1,000 physicians purchase Saykara's AI scribe solution.

19. On or about February 8, 2021, Defendant Nuance Communications, Inc. purchased Saykara. Nuance's AI scribe product is Dragon Ambient eXperience ("DAX").

20. After Nuance purchased Saykara, Nuance sold DAX, which it acquired with the purchase of Saykara, to healthcare providers.

21. After the purchase, Veasman continued to work for Nuance under the same terms and conditions of the ICA.

22. In February 2021, Saykara paid Veasman commissions for Saykara's Sales of its AI scribe solution to physicians affiliated with Washington Rural Health Collaborative.

23. On March 1, 2021, Plasch spoke to Omar Sunna from Nuance about the Importance of Veasman's relationship and involvement with StratumMed.

24. Plasch and Veasman prepared a detailed background and overview of the StratumMed/Saykara relationship that included Veasman's involvement, which Veasman understands that Plasch sent to Sunna on or about March 17, 2021.

25. On April 6, 2021 Lucas Thurman, StratumMed's Executive Director of Partnerships, sent an email to Sunna to schedule a call with Nuance in which Thurman had very positive comments about the importance of Veasman's involvement. In that regard, Thurman stated:

> It is worth noting that Ryan, Graham and Dennis have been great to work with and really have been instrumental in providing the dedication and support necessary to build a strong program. Stratum is very excited for this partnership and the immediate team at Saykara has played a big part in the framework that has been built.

26. Since Veasman brought StratumMed "to the table," Saykara and/or Nuance have sold Saykara' AI solution and Nuance's DAX to StratumMed-affiliated physicians.

27. Neither Saykara nor Nuance has paid Veasman commissions for its sales of Saykara's AI solution and Nuance's DAX to StratumMed-affiliated physicians after Veasman brought StratumMed "to the table" with a signed agreement.

28. Veasman is informed and believes and based upon such information and belief alleges that Nuance has sold DAX to physicians affiliated with Washington Rural Health Collaborative.

29. Nuance has not paid Veasman commissions for its sales of DAX to Physicians affiliated with Washington Rural Health Collaborative.

///
///
///

# FIRST CLAIM FOR RELIEF

(Unpaid wages in violation of Labor Codes sections 200-202)

30. A worker cannot be considered an independent contractor unless all three of the following conditions (the ABC test) are satisfied.

(1) The worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for performance of the work and in fact;

(2) The worker performs work that is outside the usual course of the hiring entity's business: and

(3) The worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed. *Dynamex Operations W. v. Superior Court*, 4 Cal.App.5th 903, 955 (2018).

31. Veasman did not meet the ABC test when working for Saykara and/or Nuance. Veasman was not free from the control and direction of Saykara and/or Nuance in connection with the performance of his work to bring leads/opportunities to the table, both under the contract for performance of the work and in fact.

32. In pertinent part, Section 5.0 of the ICA provides: "the Contractor agrees not to enter an agreement with any competitive organization during the term of the agreement assuming Saykara has been given the first right of refusal of the project." Pursuant to the ICA, Veasman was not permitted to work for a competitor without giving Saykara (and later Nuance) the right of first refusal of a project.

33. While employed by Saykara, Veasman worked daily with Ryan Plasch and Hughes to consummate sales of Saykara's AI scribe solution. Veasman was also on all the calls and presentations by Saykara staff to StratumMed executives and member clinics.

34. Veasman did not perform work outside the usual course of Saykara and/or Nuance's business. Saykara was in the business of selling its AI scribe solution. Nuance, after it acquired Saykara, was in the business of selling DAX. Veasman

worked as an in-house salesperson who brought leads/opportunities to the table and helped Saykara and Nuance consummate sales their products.

35. Veasman was not customarily engaged in an independently established occupation or business of the same nature as the work he performed for Saykara and later Nuance.

36. Saykara and later Nuance knowingly misclassified Veasman as an independent contractor knowing that Veasman should have been classified as an employee.

37. After March 24, 2020, Saykara sold its AI scribe solution to Stratum-affiliated physicians.

38. Veasman is owed commissions as set forth in the ICA for all sales by Saykara to Stratum affiliated physicians.

39. Saykara has not paid Veasman commissions on the sales of its AI scribe solution after March 24, 2020.

40. After March 24, 2020, Saykara sold its AI scribe solution to Washington Rual Health Collaborative-affiliated physicians.

41. Veasman is owed commissions as set forth in the ICA for all sales by Saykara to Washington Rural Health Collaborative affiliated physicians.

42. Veasman is informed and believes and based upon such information and belief alleges that Saykara has not paid Veasman all the commissions owned to him on the sales of its AI scribe solution after March 24, 2020.

43. After February 8, 2021, Nuance sold DAX to Stratum-affiliated physicians.

44. Veasman is owed commissions as set forth in the ICA for all sales by Nuance to Stratum affiliated physicians which Veasman is informed and believes and based upon such information and belief alleges exceeds $75,000.

45. Nuance has not paid Veasman commissions on the sales of DAX after March 24, 2020.

46. Veasman is informed and believes and based upon such information and belief alleges that after February 8, 2021, Nuance sold DAX to Washington Rual Health Collaborative-affiliated physicians.

47. Veasman is owed commissions as set forth in the ICA for all sales by Nuance to Washington Rural Health Collaborative affiliated physicians which Veasman is informed and believes and based upon such information and belief exceed $75,000.

48. Veasman is informed and believes and based upon such information and belief alleges that Nuance has not paid Veasman all the commissions owned to him on the sales of DAX after March 24, 2020.

49. Veasman is informed and believes and based upon such information and belief alleges that the commissions owed to him exceed $75,000 exclusive of interest.

50. The commissions that Veasman is owed based upon Saykara's sale of its AI scribe solution and later Nuance's sale of DAX to StratumMed constitute wages within the meaning of Labor Code section 200 for which Veasman has not been paid.

51. The commissions that Veasman is owed based upon Saykara's sale of its AI scribe solution and later Nuance's sale of DAX to Washington Rural Health Collective constitute wages within the meaning of Labor Code section 200 for which Veasman has not been paid.

### SECOND CLAIM FOR RELIEF

(Failure to pay wages upon discharge in violation of Labor Code section 203)

52. Plaintiff realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 51, inclusive.

53. On or about May 10, 2021, Nuance notified Veasman that his services were no longer needed, effectively terminating Veasman.

-8-
**COMPLAINT FOR UNPAID WAGES**

54. To date, Nuance has willfully failed to pay Veasman all of the wages which Nuance owes Veasman.

55. The failure of Nuance to pay Veasman all of the wages which Nuance owes Veasman constitutes a violation of Labor Code section 203 for which Nuance owes Veasman 30 days' pay.

WHEREFORE, Plaintiff DENNIS VEASMAN prays for judgment against Defendant Nuance Communications, Inc. as follows:

### As to the First Claim for Relief:

1. For general damages according to proof;

2. For special damages for unpaid current and future commissions according to proof;

3. For attorney's fees pursuant to Labor Code section 218.5 and/or any other applicable provision of law;

4. For prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing or prejudgment interest;

### As to the Second Claim for Relief:

5. For a penalty of 30 days' wages pursuant to Labor Code section 203;

### As to All Claims for Relief:

6. For cost of suit incurred herein; and

7. For such other and further relief as the Court may deem just and proper.

**DATED:** October 25, 2021　　　　**ROSEN MARSILI RAPP LLP**

By: _____
HOWARD Z. ROSEN
Attorney for Plaintiff
DENNIS VEASMAN

## DEMAND FOR JURY TRIAL

Plaintiff DENNIS VEASMAN hereby demands a jury trial on all claims for relief.

DATED: October 25, 2021  **ROSEN MARSILI RAPP LLP**

By: _____
HOWARD Z. ROSEN
Attorney for Plaintiff
DENNIS VEASMAN